# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASVHILLE
### Assigned on Briefs May 8, 2012

## STATE OF TENNESSEE v. DONALD E. FENTRESS

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40800030      John H. Gasaway, Judge**

---

**No. M2011-01505-CCA-R3-CD - Filed November 7, 2012**

---

The defendant, Donald E. Fentress, appeals the sentencing decision of the Montgomery County Circuit Court. The defendant was convicted of aggravated burglary, a Class C felony, and aggravated rape, a Class A felony. He was sentenced to an effective sentence of twenty-four years in the Department of Correction. On appeal, he contends that his sentence for rape is excessive under the facts and circumstances of his case. Specifically, he faults the trial court for failing to apply mitigating factor (8), that the defendant was suffering from a mental condition which significantly reduced his culpability for the offense. *See* T.C.A. § 40-35-113(8) (2010). Following review of the record before us, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

John T. Maher (at sentencing and appeal), Clarksville, Tennessee; Collier Goodlett, Assistant Public Defender (at trial), for the appellant, Donald E. Fentress.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and John Finklea, Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

### Procedural History and Factual Background

The charges against the defendant are based upon the actions he took on August 18, 2007, when he entered the apartment of his neighbor, the victim. The defendant, wearing a

Chicago Bulls basketball jersey, came uninvited into the apartment, went into the bedroom where the victim was, and informed her that he was going to rape her. The defendant knocked the victim down, repeatedly punched her in the face, pulled up her skirt, ripped her underwear, and forcibly penetrated her vagina with his penis. The victim, although in pain, continued to defend herself and attempted to call for help. At some point in the approximately forty-minute-long encounter, the victim went limp and pretended to be dead. As the defendant spread her legs, she pushed her fingers into the defendant's eye sockets. In the ensuing fray, the victim was able to escape and run to a neighbor's apartment.

Police were called and responded to the scene in a matter of minutes. Detective Tyler Barrett of the Clarksville Police Department arrived and observed the victim approach. She was frantic, upset, and crying. After attempting to calm her, Detective Barrett learned what had occurred, and the victim specifically said that "Don" had committed the acts. The defendant and the victim were not friends, but she did recognize the defendant as someone she saw in the neighborhood often. Detective Barrett went to the defendant's apartment, which the victim had pointed out, and was allowed entrance. The defendant denied that he knew the victim or that he had raped her. However, Detective Barrett observed a Chicago Bulls jersey in the defendant's apartment and noted that his eyes were red. The defendant was taken to the police station for questioning.

The victim was taken by ambulance to the emergency room, where she received treatment, and a rape kit was completed. The treating physician noted that the victim's injuries and statements were consistent with a sexual assault. As a result of the defendant's actions, the victim, who was suffering from systemic lupus, sustained multiple injuries to her face, head, arms, and legs.

The defendant was indicted by a Montgomery County grand jury for aggravated burglary and aggravated rape. Following a jury trial, he was convicted as charged. Thereafter, a sentencing hearing was held before the trial court. At the hearing, the State introduced the pre-sentence report, which denoted that the defendant had one prior conviction for armed robbery, for which he had served twenty years in prison. Also introduced was a mental evaluation and competency report from September 28, 2007, which indicated that the defendant was competent to stand trial and was able to appreciate the nature and wrongfulness of his actions. The defendant also introduced a report from James S. Walker, Ph.D., who had evaluated the defendant after trial. The report concluded that the defendant has a probable mental condition that includes frequently yelling, screaming, hitting jail cell walls with his fists, and physically fighting a non-existent person. Other than some letters written by the defendant, no other evidence was entered.

After weighing the evidence presented, the trial court imposed concurrent sentences

of five years for the burglary conviction and twenty-four years for the rape. Following the denial of his motion for new trial, the defendant filed a timely notice of appeal.

## Analysis

On appeal, the single issue raised by the defendant is whether the sentence imposed for the rape conviction is excessive because the trial court did not give the defendant's mental condition any mitigation consideration under Tennessee Code Annotated section 40-35-113(8). Previously, our review of a defendant's challenge to the length, range, or manner of service of a sentence, has been a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). However, in a recent opinion, our supreme court provided a thorough review of the more recent developments in our sentencing laws and adopted a new standard of review for sentencing in light of these changes. *State v. Susan Renee Bise*, ___ S.W.3d ___, No. E2011-00005-SC-R11-CD (Tenn., Sept. 26, 2012). In announcing the new standard of review, the *Bise* court reasoned:

> [W]hen the 2005 amendments vested the trial court with broad discretionary authority in the imposition of sentences, de novo appellate review and the "presumption of correctness" ceased to be relevant. Instead, sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness."

*Id*. Therefore, we now review the defendant's sentencing challenge under an abuse of discretion standard with a "presumption of reasonableness." *Id*. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401, Sentencing Comm'n Cmts; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In fashioning a sentence, the trial court is obliged to determine the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the guilty plea and sentencing hearings; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made on his behalf about sentencing; and (8) the defendant's potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; *Bise*, ___ S.W.3d ___, No. E2011-00005-SC-R11-CD.

The trial court should also consider enhancing and mitigating factors; however, the statutory factors are advisory only. *State. v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Additionally, our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Id*. at 345. The trial court must "place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." T.C.A. § 40-35-210(2). However, if a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Susan Renee Bise*, No. E2011-00005-SC-R11-CD.

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. The purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," T.C.A. § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," T.C.A. § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," T.C.A. § 40-35-103(5). *See also Carter*, 254 S.W.3d at 343. Under such circumstances, appellate courts are left with a much narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of the defendant's sentence. *Id*. at 345-46. In fact, appellate courts may not disturb a sentence imposed in such a manner even if we had preferred a different result. *Id*.

As noted, the defendant challenges only the sentence he received for the rape conviction. As a Range I offender convicted of a Class A felony, he was subject to a range of punishment between fifteen and twenty-five years. *See* T.C.A. § 40-35-112(A)(1). In setting the length of the sentence at twenty-four years, the trial court found two enhancement factors, those being prior criminal history and a particularly vulnerable victim. *See* T.C.A. 40-35-114(1), (4). The defendant makes no challenge to application of those factors, and we conclude that there was no error in the trial court's application of them.

The defendant's sole challenge to the sentence is that the trial court refused to apply mitigating factor (8) based upon the defendant's mental condition. In support of his argument, the defendant relies upon the information and conclusions contained in the report authored by Dr. Walker. Specifically, he notes the conclusions that: (1) the defendant has a severe psychotic disorder; (2) he has hallucinations and delusions regarding conflicts with females; (3) he was incompetent to stand trial at the time of this interview; (4) he needed immediate involuntary psychological inpatient placement; (5) his current condition brings into question his mental state at the time of the crime; and (6) further assessment is warranted.

We do not dispute the defendant's claim that this court has held that a defendant's history of mental illness qualifies as a mitigating factor under Tennessee Code Annotated section 40-35-113(8). *See State v. Max*, 714 S.W.2d 289, 296 (Tenn. Crim. App. 1986). However, even though the condition may be considered, the defendant must sufficiently establish not only the presence of the defect, but also a causal link between his ailment and the offense charged. *State v. Robert James Yoreck, III*, No. M2004-01289-CCA-R3-CD (Tenn. Crim. App., at Nashville, June 29, 2004).

In regard to mitigation, the trial court made the following statements on the record:

> As far as mitigating factors are concerned, under [Tennessee Code Annotated section] 40-35-113, what [defense counsel] argued with regard to [the defendant's] mental state comes under subsection eight; and what it says is that the defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense.
>
> . . . .
>
> But I don't think even the report by Dr. Walker rises to the level of saying that the mental condition that he had diminished the culpability when he decided to walk in behind her as she went into her apartment, beat her and rape her. And without that connection I'm not going to apply this mitigator.

We must agree with the trial court that Dr. Walker's report, although expressing concern about the defendant's mental state at the time of the crime, does not state with any certainty that the defendant's culpability was diminished at that time. In fact, the report is quiet clear that the defendant's actual state of mind at the time of the commission of the offenses could not be determined due to the defendant's lack of cooperation. Specifically, the report states: "It will be difficult, if not impossible, to successfully assess [the defendant's] mental state without successful treatment of his psychosis." While the report can support the conclusion that the defendant is suffering from a psychotic condition at the present time, it is not evidence of a causal link between his condition and the offense charged. Moreover, the State introduced a competency evaluation from 2007, much closer in time to the crime, that determined that the defendant was competent to stand trial and understood the wrongfulness of his actions. We cannot conclude that the trial court abused its discretion by refusing to apply this mitigating factor on these facts. As such, the defendant is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the sentence of twenty-four years is affirmed.


_____
JOHN EVERETT WILLIAMS, JUDGE